David Schexnaydre, *Pro Hac Vice*
david@schexnaydre.com
SCHEXNAYDRE LAW FIRM
2895 Hwy 190, Ste 212
Mandeville, LA 70471
Telephone: (985) 292-2020
Fax: (985) 235-1089

Jennifer W. Kennedy, CA SBN 185406
jenniferkennedyesq@gmail.com
Jennifer W. Kennedy, Attorney at Law
61 S. Baldwin Ave. #1626
Sierra Madre, CA 91025
Telephone: (626) 888-2263

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| TRACEY SCHROEDER, MARK AARON, OLGA AGUILAR, MONICA ALVAREZ, CARISSA ANDERSON, ANNETTE ANTILLA, AMY ARMAS, ZAIRA AUGUSTO, JOSE RENE AVALOS, MARINA AVETYAN, ANA AZCARATE, SCOTT BALIAN, SHEHAN BANGAYAN, WENDY BARRAGAN, CHRISTY BARKER, CHERON BARTEE, OLIVER BARTEE II, ROSA BELTRAN, EDWARD BENNETT, BENITO BERNAL, JULIE BERSHIN, TYPHANIE BOGARD, MARIANA BOLANOS, NORMA BRAMBILA, JOYUA BRATTON, JANET BREGMAN, ANOUSH BURMAYAN, CHARMAINE BUTLER, | 2:23-cv-10307 (SVW)(SSCx)<br><br>**FIRST AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; BREACH OF CONTRACT AND WRONGFUL TERMINATION; JURY TRIAL DEMANDED** |

ADRIANA CALDERA-MARTIN, TRACY CALDWELL, MARCO CARAVAGGIO, CLAUDIA CARBONELL, LISA CERVANTES-SANDOVAL, JOHANA CERVANTES, JOSEPH CESAREO, MICHAEL CHARTIER, ANGELA CHAVEZ, DARIUS CHEATOM, NIKI CHIAROSCURO, LEEANNE CLOKEY, NATALIE CONTRERAS, YADHIRA CONTRERAS, ROBERT CORCHADO, CASEY CORCORAN, PAOLA CORIA, YOLANDA CORONA, GLORIA CORTEZ, GUILLERMO CORTEZ, TAIMI CROWELL, RIAN DAVIS, AMY DEDEAUX, ZIA DEJAN, CINTIA DELAURA, ANTONIO DELGADO, JAMES DESCHENES, YASMIN DIAZ, STACY DICKINSON, JENNIFER DILORENZO, ANGELA DOREL, DEBORA DORYON, CYNTHIA DUREN, LYNELLE EIMER, IGNACIO EMERICK, ROBERTO EMERICK, NICOLE FAIN, MARK FAIRHURST, ELISA FARIAS, THOMAS FARLEY, AARYN FISHER, MAUREEN FLAHERTY, WILLIAM FLATTEN, GREGORY SCOTT FORTES, ANA FREGOSO, DAISY GAITAN-VALLE, DIANA GALINDO, NOE GALINDO, DEBORAH GARCIA, LUIS GARCIA, SANDRA GARCIA, ROBERT GARNHARDT, ANTHONY GAY, VICTORIA GERTES, GILBERT GIL, MARIA CARMEN GILLMAN, DORALI GOMEZ, LOURDES GOMEZ, NADIA GONZALEZ WENDY GONZALEZ, VINCE GRANT, FATIMA GRAYSON, CHERI GURGANUS, JENNIFER GUSDORF,

2

FIRST AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; BREACH OF CONTRACT AND WRONGFUL TERMINATION; JURY TRIAL DEMANDED

HENRY GUTTIEREZ, CARMEN
HAWA, CORA HAYASHI, CARMEN
HERNANDEZ DE GOMEZ,
ELIZABETH HERNANDEZ, JEFFERY
HERNANDEZ, OLGA HERNANDEZ,
VANESSA HERNANDEZ, YOLANDA
HERNANDEZ-LOPEZ, ISABEL
HERNANDEZ-REYES, FARAH
HIRSCH, JESSICA GALE HOESCHEN,
JEREMY HULES, BRYAN HUNTER,
MIURELL IRAHETA, NICOLE JOON,
YVONNE JUAREZ, INGRID ANN
KEASBERRY, KAREN KELLOGG,
SCOTT KENNEDY, TALAR
KEOSEYAN, KYE KIM, JODI
KIRKPATRICK, STEPHEN KOTLEBA,
HERIPSIMA KOUZIAN, AUN
LAFORTUNE, CATHERINE LAMPLE,
EDDIE LAMPLE, JOSE LANDAZURI,
LARRY LAREZ, MIA LAWSON,
CELIA LEE, BLANCA LICEA, MARK
LINLEY, SONI LLOYD, GLORIA
LOPEZ, STEPHANIE LOPEZ, KWOK
CHUN LOUIE, LUIS LOYA, BEN
LUCAS, SHAUN LUCIANO, HAROLD
LUIZAGA, MONIQUE LUKENS,
ROXANNE MADSEN, ANDREA
MAGAÑA, STEVEN MANN, JACOB
MARK, FRANCISCA MARTINEZ,
ROSA MARTINEZ-ZELAYA, DONNA
MATTHEWS, PATRICIA MATUS,
LISA MCCARRELL, GABRIEL
MEDINA, JACQUELINE MERCADO,
ROBIN MERLINO, JUSTIN
MILAUCKAS, RACHELLE
MINUTELLA, ALMEDA SAMONE
MOCK, LILIANA MONTOYA,
AILEEN MORA, CHRISTOPHER
MORENO, FRANCIS MORENO,
JACKIE OCKENE-FOGELMAN,

FIRST AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; BREACH OF CONTRACT AND
WRONGFUL TERMINATION; JURY TRIAL DEMANDED

DULCE OLIVERA, JAVIER ORTEGA-
MADRID, RAQUEL ORTEGA,
KAREN PACKER, CAROL
PANIAGUA, TYNELL PAYNE, INA
PERRY, SHAWN PETERSEN, CARRIE
PHU, KARLA PINEDO, ALDO PINTO,
NICOLE PIVARAL, DELINA
PLEASANTS, HEATHER
POUNDSTONE, YVETTE PRICE,
ERICA QUEZADA, ALMA
QUINTANILLA-ROMERO,
KIMBERLY RAIA, ANASTASIA
RAMEAU, REYNA RAMIENTOS,
TANYA RAMIREZ, CATHERINE
REDDING, MICHAEL REEVES, LUZ
REGNIER, JESUS REYES, DAVID
RIESS, MARIA RIVAS, MAYLEEN
RIVAS, CHRISTOPHER ALEXANDER
RODRIGUEZ, MARIEL RODRIGUEZ,
EDWARD ROMERO, LETICIA
ROMERO, JUAN ROMO, JOY
ROUNDS, KIMBERLY RUIZ, MARIA
RUSSELL, TRISHA RUSSELL,
THOMAS RYAN, HAROLD
SALAZAR, MARC SALAZAR,
REYNALDO SALCEDO, MARTHA
SANCHEZ, THERESA SANFORD,
MARTHA SARAVIA, TREVOR
SCHMIDT, ALICE MARIE SCOTT,
DENICE SEALY, JOHN SENDREY,
LINDA MARIE SMITH-BALDRIDGE,
LAURA SMOLINSKY, SABRINA
STEVENSON, ESTHER TAL,
GAYANE TARAKHCHYAN, MARINE
TARAKHCHYAN, ORLENA TECHO,
BELLA TER-MARGARYAN,
ANTHONY THYMES, NANCY
TOPETE, CHRISTIE UYEMATSU,
VANESSA VANCE, PERLA VAZQUEZ,
RAQUEL VILLALTA, FABIOLA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FIRST AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; BREACH OF CONTRACT AND
WRONGFUL TERMINATION; JURY TRIAL DEMANDED

VILLAMAR, ROSALBA
VILLANUEVA, VILMA VILLEGAS,
GEMMA WENGER, ROGER
WHITING, MARCI WILLIAMS,
TANYA WONG, DEVON WOODS,
SHAWN WORKMAN, NANCY
WORSHAM, ADRIAN WRIGHT,
KAREN ZELAYA-HERNANDEZ,
MOLLY ZUELKE-SHEFFIELD,

                                    Plaintiffs,

            vs.

LOS ANGELES UNIFIED SCHOOL
DISTRICT; ALBERTO CARVALHO,
as an individual and in his official
capacity as Superintendent; MEGAN
REILLY, as an individual and in her
official capacity as Interim
Superintendent; and DOES 1-100,
inclusive,

                                    Defendants.

---

NOW INTO COURT, through undersigned counsel, come Plaintiffs,

Tracey Schroeder, *et al.*, (hereinafter "Plaintiffs"), who file this First Amended

Complaint against Defendants, the Los Angeles Unified School District, Alberto

Carvalho, and Megan Reilly (hereinafter "Defendants"), presenting allegations

and causes of action as follows:

## DESCRIPTION OF ACTION

**This is a §1983 case seeking redress from Defendants for the deprivation**

**of Plaintiffs' Constitutional and federal statutory right to refuse an EUA**

**investigational drug without incurring a penalty or loss of benefits to which Plaintiffs were otherwise entitled, and seeking redress under California law for breach of employment contract and for wrongful termination.**

This lawsuit is brought under 42 U.S.C. §1983 seeking redress for deprivation of rights granted to Plaintiffs by the United States Constitution, 21 U.S.C. §360bbb-3 *et seq* (the EUA statute), 42 USC §247d-6d *et seq* (the PREP Act), 45 CFR Part 46, 18 U.S.C. §242, ICCPR Treaty, and the common laws of the State of California to hold accountable Defendants, State Actors at all times pertinent herein, for damages caused by their deprivation of Plaintiffs' rights arising out of Defendants' unconstitutional, unlawful, malicious, unequal and contractually violative COVID-19 investigational drug mandate. Special laws apply to the drugs designated for compliance with Defendants' "vaccine" mandates, because the FDA defines the available drugs as "investigational with no license for any indication." And even though Defendants' mandates were instituted during and in response to a pandemic emergency, as the U.S. Supreme Court noted since the beginning of the pandemic: "**even in a pandemic, the Constitution cannot be put away and forgotten**." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63, 208 L.Ed.2d 206 (2020).

This lawsuit is also brought under California Government Code Section § 12940 et seq. for breach of contract and wrongful termination.

FIRST AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; BREACH OF CONTRACT AND
WRONGFUL TERMINATION; JURY TRIAL DEMANDED

## I.   <u>INTRODUCTION</u>

1.     The Plaintiffs herein are current and former employees of the Los Angeles Unified School District ("LAUSD"), serving in various departments and at various school sites throughout the District.

2.     From the beginning of the COVID-19 pandemic through the filing of this complaint, the LAUSD and its Superintendents, Alberto Carvalho, and Megan Reilly, have continually used the pandemic to deprive Plaintiffs of their Constitutional protections and statutory authorities.

3.     In August of 2021, Defendants enacted a Policy requiring Plaintiffs to inject certain drugs into their bodies as a condition to continue employment with the LAUSD (the Policy).

4.     The mandated drugs were under Emergency Use Authorization (EUA), Emergency Use Instructions (EUI), or the PREP Act authority, none of which can ever come under mandatory conditions.

5.     The Policy, as applied through the use of EUA/EUI/PREP Act, unlawfully usurped the authority of Congress to determine the conditions by which its laws would function and, specifically, the conditions by which individuals could not be subjected to the use of EUA/EUI/PREP Act products.

6.     Plaintiffs sue Defendants for deprivation of Fourteenth Amendment and federal statutory rights, as well as for breach of contract and wrongful

FIRST AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; BREACH OF CONTRACT AND
WRONGFUL TERMINATION; JURY TRIAL DEMANDED

termination, all of which caused Plaintiffs to suffer severe financial, emotional, and other damages.

## II.    <u>JURISDICTION AND VENUE</u>

7.    This Court has federal-question jurisdiction under 42 U.S.C. §1983 for violations of civil rights under the Fourteenth Amendment to the United States Constitution.

8.    The case presents a federal question within the Court's jurisdiction under Article III, § 2 of the United States Constitution and 28 U.S.C. §§ 1131 and 1343.

9.    Venue is proper in this Court under 28 U.S.C. § 1391 because at all times pertinent, the parties resided in this District, and a substantial part of the events giving rise to this claim occurred in this District.

10.    This Court has the authority and jurisdiction to award costs and reasonable attorney's fees under 42 U.S.C. § 1988.

11.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

12.    This Court has personal jurisdiction over Defendants as they are domiciled within this Court's jurisdictional boundaries.

13.    This Court has subject-matter jurisdiction over the parties because all acts complained of herein were committed by Defendants in the State of California and caused damage and/or deprivation to the Plaintiffs listed herein.

## III.    **PLAINTIFFS**

14.    The following individuals are plaintiffs herein:

14.1. Plaintiff, Tracey Schroeder, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.2.  Plaintiff, Mark Aaron, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.3.  Plaintiff, Olga Aguilar, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.4.  Plaintiff, Monica Alvarez, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.5.  Plaintiff, Carissa Anderson, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.6.  Plaintiff, Annette Antilla, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.7.  Plaintiff, Amy Armas, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.8.  Plaintiff, Zaira Augusto is an adult individual who all times pertinent

was employed by the Los Angeles Unified School District.

14.9. Plaintiff, Jose Rene Avalos, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.10. Plaintiff, Marina Avetyan, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.11. Plaintiff, Ana Azcarate, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.12. Plaintiff, Scott Balian, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.13. Plaintiff, Shehan Bangayan, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.14. Plaintiff, Wendy Barragan, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.15. Plaintiff, Christy Barker, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.16. Plaintiff, Cheron Bartee, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.17. Plaintiff, Oliver Bartee II, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.18. Plaintiff, Rosa Beltran, is an adult individual who all times pertinent

FIRST AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; BREACH OF CONTRACT AND
WRONGFUL TERMINATION; JURY TRIAL DEMANDED

was employed by the Los Angeles Unified School District.

14.19. Plaintiff, Edward Bennett, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.20. Plaintiff, Benito Bernal, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.21. Plaintiff, Julie Bershin, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.22. Plaintiff, Typhanie Bogard, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.23. Plaintiff, Mariana Bolanos, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.24. Plaintiff, Norma Brambila, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.25. Plaintiff, Joyua Bratton, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.26. Plaintiff, Janet Bregman, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.27. Plaintiff, Anoush Burmayan, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.28. Plaintiff, Charmaine Butler, is an adult individual who all times

pertinent was employed by the Los Angeles Unified School District.

14.29. Plaintiff, Adriana Caldera-Martin, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.30. Plaintiff, Tracy Caldwell, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.31. Plaintiff, Marco Caravaggio, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.32. Plaintiff, Claudia Carbonell, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.33. Plaintiff, Lisa Cervantes-Sandoval, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.34. Plaintiff, Johana Cervantes, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.35. Plaintiff, Joseph Cesareo, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.36. Plaintiff, Michael Chartier, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.37. Plaintiff, Angela Chavez, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.38. Plaintiff, Darius Cheatom, is an adult individual who all times pertinent

was employed by the Los Angeles Unified School District.

14.39. Plaintiff, Niki Chiaroscuro, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.40. Plaintiff, LeeAnne Clokey, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.41. Plaintiff, Natalie Contreras, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.42. Plaintiff, Yadhira Contreras, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.43. Plaintiff, Robert Corchado, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.44. Plaintiff, Casey Corcoran, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.45. Plaintiff, Paola Coria, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.46. Plaintiff, Yolanda Corona, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.47. Plaintiff, Gloria Cortez, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.48. Plaintiff, Guillermo Cortez, is an adult individual who all times

FIRST AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; BREACH OF CONTRACT AND
WRONGFUL TERMINATION; JURY TRIAL DEMANDED

pertinent was employed by the Los Angeles Unified School District.

14.49. Plaintiff, Taimi Crowell, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.50. Plaintiff, Rian Davis, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.51. Plaintiff, Amy Dedeaux, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.52. Plaintiff, Zia DeJan, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.53. Plaintiff, Cintia DeLaura, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.54. Plaintiff, Antonio Delgado, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.55. Plaintiff, James Deschenes, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.56. Plaintiff, Yasmin Diaz, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.57. Plaintiff, Stacy Dickinson, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.58. Plaintiff, Jennifer DiLorenzo, is an adult individual who all times

pertinent was employed by the Los Angeles Unified School District.

14.59. Plaintiff, Angela Dorel, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.60. Plaintiff, Debora Doryon, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.61. Plaintiff, Cynthia Duren, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.62. Plaintiff, Lynelle Eimer, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.63. Plaintiff, Ignacio Emerick, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.64. Plaintiff, Roberto Emerick, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.65. Plaintiff, Nicole Fain, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.66. Plaintiff, Mark Fairhurst, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.67. Plaintiff, Elisa Farias, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.68. Plaintiff, Thomas Farley, is an adult individual who all times pertinent

FIRST AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; BREACH OF CONTRACT AND WRONGFUL TERMINATION; JURY TRIAL DEMANDED

was employed by the Los Angeles Unified School District.

14.69. Plaintiff, Aaryn Fisher, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.70. Plaintiff, Maureen Flaherty, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.71. Plaintiff, William Flatten, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.72. Plaintiff, Gregory Scott Fortes, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.73. Plaintiff, Ana Fregoso, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.74. Plaintiff, Daisy Gaitan-Valle, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.75. Plaintiff, Diana Galindo, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.76. Plaintiff, Noe Galindo, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.77. Plaintiff, Deborah Garcia, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.78. Plaintiff, Luis Garcia, is an adult individual who all times pertinent was

FIRST AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; BREACH OF CONTRACT AND WRONGFUL TERMINATION; JURY TRIAL DEMANDED

employed by the Los Angeles Unified School District.

14.79. Plaintiff, Sandra Garcia, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.80. Plaintiff, Robert Garnhardt, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.81. Plaintiff, Anthony Gay, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.82. Plaintiff, Victoria Gertes, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.83. Plaintiff, Gilbert Gil, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.84. Plaintiff, Maria Carmen Gillman, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.85. Plaintiff, Dorali Gomez, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.86. Plaintiff, Lourdes Gomez, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.87. Plaintiff, Nadia Gonzalez, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.88. Plaintiff, Wendy Gonzalez, is an adult individual who all times pertinent

was employed by the Los Angeles Unified School District.

14.89. Plaintiff, Vince Grant, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.90. Plaintiff, Fatima Grayson, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.91. Plaintiff, Cheri Gurganus, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.92. Plaintiff, Jennifer Gusdorf, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.93. Plaintiff, Henry Guttierez, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.94. Plaintiff, Carmen Hawa, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.95. Plaintiff, Cora Hayashi, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.96. Plaintiff, Carmen Hernandez de Gomez, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.97. Plaintiff, Elizabeth Hernandez, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.98. Plaintiff, Jeffery Hernandez, is an adult individual who all times

pertinent was employed by the Los Angeles Unified School District.

14.99. Plaintiff, Olga Hernandez, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.100.   Plaintiff, Vanessa Hernandez, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.101.   Plaintiff, Yolanda Hernandez-Lopez, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.102.   Plaintiff, Isabel Hernandez-Reyes, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.103.   Plaintiff, Farah Hirsch, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.104.   Plaintiff, Jessica Gale Hoeschen, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.105.   Plaintiff, Jeremy Hules, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.106.   Plaintiff, Bryan Hunter, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.107.   Plaintiff, Miurell Iraheta, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.108.   Plaintiff, Nicole Joon, is an adult individual who all times pertinent

was employed by the Los Angeles Unified School District.

14.109.   Plaintiff, Yvonne Juarez, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.110.   Plaintiff, Ingrid Ann Keasberry, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.111.   Plaintiff, Karen Kellogg, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.112.   Plaintiff, Scott Kennedy, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.113.   Plaintiff, Talar Keoseyan, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.114.   Plaintiff, Kye Kim, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.115.   Plaintiff, Jodi Kirkpatrick, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.116.   Plaintiff, Stephen Kotleba, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.117.   Plaintiff, Heripsima Kouzian, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.118.   Plaintiff, Aun LaFortune, is an adult individual who all times

FIRST AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; BREACH OF CONTRACT AND WRONGFUL TERMINATION; JURY TRIAL DEMANDED

pertinent was employed by the Los Angeles Unified School District.

14.119.    Plaintiff, Catherine Lample, is an adult individual who all times

pertinent was employed by the Los Angeles Unified School District.

14.120.    Plaintiff, Eddie Lample, is an adult individual who all times

pertinent was employed by the Los Angeles Unified School District.

14.121.    Plaintiff, Jose Landazuri, is an adult individual who all times

pertinent was employed by the Los Angeles Unified School District.

14.122.    Plaintiff, Larry Larez, is an adult individual who all times pertinent

was employed by the Los Angeles Unified School District.

14.123.    Plaintiff, Mia Lawson, is an adult individual who all times pertinent

was employed by the Los Angeles Unified School District.

14.124.    Plaintiff, Celia Lee, is an adult individual who all times pertinent

was employed by the Los Angeles Unified School District.

14.125.    Plaintiff, Blanca Licea, is an adult individual who all times pertinent

was employed by the Los Angeles Unified School District.

14.126.    Plaintiff, Mark Linley, is an adult individual who all times pertinent

was employed by the Los Angeles Unified School District.

14.127.    Plaintiff, Soni Lloyd, is an adult individual who all times pertinent

was employed by the Los Angeles Unified School District.

14.128.    Plaintiff, Gloria Lopez, is an adult individual who all times pertinent

FIRST AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; BREACH OF CONTRACT AND
WRONGFUL TERMINATION; JURY TRIAL DEMANDED

was employed by the Los Angeles Unified School District.

14.129.   Plaintiff, Stephanie Lopez, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.130.   Plaintiff, Kwok Chun Louie, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.131.   Plaintiff, Luis Loya, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.132.   Plaintiff, Ben Lucas, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.133.   Plaintiff, Shaun Luciano, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.134.   Plaintiff, Harold Luizaga, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.135.   Plaintiff, Monique Lukens, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.136.   Plaintiff, Roxanne Madsen, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.137.   Plaintiff, Andrea Magaña, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.138.   Plaintiff, Steven Mann, is an adult individual who all times pertinent

was employed by the Los Angeles Unified School District.

14.139.   Plaintiff, Jacob Mark, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.140.   Plaintiff, Francisca Martinez, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.141.   Plaintiff, Rosa Martinez-Zelaya, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.142.   Plaintiff, Donna Matthews, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.143.   Plaintiff, Patricia Matus, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.144.   Plaintiff, Lisa McCarrell, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.145.   Plaintiff, Gabriel Medina, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.146.   Plaintiff, Jacqueline Mercado, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.147.   Plaintiff, Robin Merlino, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.148.   Plaintiff, Justin Milauckas, is an adult individual who all times

pertinent was employed by the Los Angeles Unified School District.

14.149.   Plaintiff, Rachelle Minutella, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.150.   Plaintiff, Almeda Samone Mock, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.151.   Plaintiff, Liliana Montoya, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.152.   Plaintiff, Aileen Mora, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.153.   Plaintiff, Christopher Moreno, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.154.   Plaintiff, Francis Moreno, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.155.   Plaintiff, Jackie Ockene-Fogelman, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.156.   Plaintiff, Dulce Olivera, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.157.   Plaintiff, Javier Ortega-Madrid, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.158.   Plaintiff, Raquel Ortega, is an adult individual who all times

pertinent was employed by the Los Angeles Unified School District.

14.159.   Plaintiff, Karen Packer, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.160.   Plaintiff, Carol Paniagua, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.161.   Plaintiff, Tynell Payne, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.162.   Plaintiff, Ina Perry, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.163.   Plaintiff, Shawn Petersen, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.164.   Plaintiff, Carrie Phu, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.165.   Plaintiff, Karla Pinedo, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.166.   Plaintiff, Aldo Pinto, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.167.   Plaintiff, Nicole Pivaral, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.168.   Plaintiff, Delina Pleasants, is an adult individual who all times

pertinent was employed by the Los Angeles Unified School District.

14.169.   Plaintiff, Heather Poundstone, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.170.   Plaintiff, Yvette Price, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.171.   Plaintiff, Erica Quezada, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.172.   Plaintiff, Alma Quintanilla-Romero, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.173.   Plaintiff, Kimberly Raia, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.174.   Plaintiff, Anastasia Rameau, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.175.   Plaintiff, Reyna Ramientos, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.176.   Plaintiff, Tanya Ramirez, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.177.   Plaintiff, Catherine Redding, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.178.   Plaintiff, Michael Reeves, is an adult individual who all times

FIRST AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; BREACH OF CONTRACT AND
WRONGFUL TERMINATION; JURY TRIAL DEMANDED

pertinent was employed by the Los Angeles Unified School District.

14.179.   Plaintiff, Luz Regnier, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.180.   Plaintiff, Jesus Reyes, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.181.   Plaintiff, David Riess, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.182.   Plaintiff, Maria Rivas, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.183.   Plaintiff, Mayleen Rivas, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.184.   Plaintiff, Christopher Alexander Rodriguez, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.185.   Plaintiff, Mariel Rodriguez, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.186.   Plaintiff, Edward Romero, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.187.   Plaintiff, Leticia Romero, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.188.   Plaintiff, Juan Romo, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.189.   Plaintiff, Joy Rounds, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.190.   Plaintiff, Kimberly Ruiz, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.191.   Plaintiff, Maria Russell, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.192.   Plaintiff, Trisha Russell, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.193.   Plaintiff, Thomas Ryan, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.194.   Plaintiff, Harold Salazar, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.195.   Plaintiff, Marc Salazar, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.196.   Plaintiff, Reynaldo Salcedo, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.197.   Plaintiff, Martha Sanchez, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

FIRST AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; BREACH OF CONTRACT AND
WRONGFUL TERMINATION; JURY TRIAL DEMANDED

14.198.   Plaintiff, Theresa Sanford, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.199.   Plaintiff, Martha Saravia, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.200.   Plaintiff, Trevor Schmidt, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.201.   Plaintiff, Alice Marie Scott, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.202.   Plaintiff, Denice Sealy, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.203.   Plaintiff, John Sendrey, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.204.   Plaintiff, Linda Marie Smith-Baldridge, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.205.   Plaintiff, Laura Smolinsky, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.206.   Plaintiff, Sabrina Stevenson, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.207.   Plaintiff, Esther Tal, is an adult individual who all times pertinent

FIRST AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; BREACH OF CONTRACT AND WRONGFUL TERMINATION; JURY TRIAL DEMANDED

was employed by the Los Angeles Unified School District.

14.208.   Plaintiff, Gayane Tarakhchyan, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.209.   Plaintiff, Marine Tarakhchyan, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.210.   Plaintiff, Orlena Techo, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.211.   Plaintiff, Bella Ter-Margaryan, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.212.   Plaintiff, Anthony Thymes, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.213.   Plaintiff, Nancy Topete, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.214.   Plaintiff, Christie Uyematsu, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.215.   Plaintiff, Vanessa Vance, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.216.   Plaintiff, Perla Vazquez, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.217.   Plaintiff, Raquel Villalta, is an adult individual who all times

pertinent was employed by the Los Angeles Unified School District.

14.218.    Plaintiff, Fabiola Villamar, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.219.    Plaintiff, Rosalba Villanueva, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.220.    Plaintiff, Vilma Villegas, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.221.    Plaintiff, Gemma Wenger, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.222.    Plaintiff, Roger Whiting, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.223.    Plaintiff, Marci Williams, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.224.    Plaintiff, Tanya Wong, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.225.    Plaintiff, Devon Woods, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.226.    Plaintiff, Shawn Workman, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.227.    Plaintiff, Nancy Worsham, is an adult individual who all times

pertinent was employed by the Los Angeles Unified School District.

14.228.   Plaintiff, Adrian Wright, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.229.   Plaintiff, Karen Zelaya-Hernandez, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

14.230.   Plaintiff, Molly Zuelke-Sheffield, is an adult individual who all times pertinent was employed by the Los Angeles Unified School District.

## IV.   **DEFENDANTS**

15.     The following are named as defendants herein:

15.1.   Defendant, the Los Angeles Unified School District (hereinafter "LAUSD" and "the District") is a public school district located in the City of Los Angeles, County of Los Angeles, State of California.

15.2.   Defendant, Megan Reilly, was the superintendent of the Los Angeles Unified School District from April 23, 2021, through February 2022. Ms. Reilly is named as a defendant in her official and individual capacities.

15.3.   Defendant, Alberto Carvalho, is the current superintendent of the Los Angeles Unified School District, taking office in February 2022.  Mr. Carvalho is named as a defendant in his official and individual capacities.

///

///

## V.      FACTUAL ALLEGATIONS

16.      Plaintiffs make no assertions regarding whether it is lawful for a public or private entity to mandate the use of a ***licensed*** vaccine. Plaintiffs' allegations herein relate only to Defendants demanding the compulsory use of drugs and devices under 21 U.S.C. §360bbb-3 (the EUA statute) and The PREP Act for compliance with its COVID-19 Vaccination Policy (hereinafter referred to as "Policy").

17.      At all times pertinent, the only COVID-19 drugs introduced into commerce for use by Plaintiffs in the State of California were drugs wholly owned by the federal government, only distributed through a federal program, and only authorized under the EUA statute and provided immunity under the PREP Act.

18.      Plaintiffs' claims contest how Defendants applied their mandate, not that they issued a mandate.

19.      Therefore, no legal argument relating to <u>vaccine mandates</u> is applicable to this action because, as a matter of law, no person has lawful authority to require another person to inject an unlicensed drug into their body as a condition of anything.

20.      Plaintiffs adamantly assert that an individual has the absolute Constitutional and federal statutory right to refuse the administration of an

FIRST AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; BREACH OF CONTRACT AND
WRONGFUL TERMINATION; JURY TRIAL DEMANDED

Emergency Use Authorization (EUA) drug (e.g., Pfizer BioNTech COVID-19 Vaccine) or device (e.g., EUA testing articles and masks) without incurring a penalty or losing a benefit to which they are otherwise entitled.  Moreover, such a right is not dependent upon a person seeking a religious or medical exemption.

21.    Plaintiffs assert that they have the Constitutional and federal statutory right to refuse administration of a drug granted expanded access protocols by the CDC under its assumed Emergency Use Instructions (EUI) authority.

22    Plaintiffs assert that they have the Constitutional and federal statutory right to refuse participation in any activity or product under the PREP Act.

23.    Plaintiffs assert that Congress prohibits Defendants from establishing the EUA statute and PREP Act conditions requiring Plaintiffs to surrender their statutory rights and Constitutional protections as a condition to enjoy the privileges and benefits offered by the Los Angeles Unified School District.

A.    **THE POLICY**

24.    On or about August 13, 2021, Defendants issued "COVID-19 Vaccination Requirements"[1] to "All Employees" of the Los Angeles Unified School District (LAUSD) to "be fully vaccinated against COVID-19 no later than October 15, 2021" as a condition to start or continue employment.

_____

[1] See Exhibit A, COVID-19 Vaccination Requirements.

FIRST AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; BREACH OF CONTRACT AND WRONGFUL TERMINATION; JURY TRIAL DEMANDED

25.     The Policy, as applied, required Plaintiffs to unlawfully inject federally owned EUA, EUI, or PREP Act unlicensed drugs into their bodies under threat of penalty, in violation of federal law and Plaintiffs' Fourteenth Amendment guarantees (see *infra*).

26.     Defendants' Policy required Plaintiffs "to participate in regular COVID-19 testing" utilizing investigational testing articles authorized only for emergency use protocols under the EUA statute and under PREP Act immunity.

27.     This requirement was a violation of federal law (see *infra*) and Plaintiffs' Constitutional protections.

28.     As a matter of law, in 2021, 2022, and most of 2023, no COVID-19 drug existed in the State of California, or anywhere else in the United States, that was not under EUA or EUI.

29.     As a matter of law, no COVID-19 drug that was licensed by the FDA with a legal indication to prevent infection with or transmission of the SARS-CoV-2 virus was introduced into commerce for general commercial marketing for lawful compliance with Defendants' Policy.

30.     Moreover, only EUA/PREP Act drugs, testing articles, or masks were available to Plaintiffs from the beginning of the COVID-19 Pandemic through the filing of this Complaint.

31.     Therefore, at all times pertinent, it is an irrefutable fact that Defendants relied exclusively on EUA, EUI, and PREP Act medical products for Plaintiffs' compliance with the Policy.

32.     Therefore, Defendants' Policy, as applied, was *ultra vires*, arbitrary and capricious (see *infra*).

33.     After being presented with Defendants' ultimatum, certain of Plaintiffs exercised their federally secured right to REFUSE an injection of an EUA/EUI/PREP Act medical product, at which time Defendants penalized them by disciplining Plaintiffs and ultimately terminating their employment, and/or by causing Plaintiffs' involuntary resignations and involuntary acceptance of early retirement as a direct result of Plaintiffs' exercise of their rights to REFUSE the Defendants' demand that they accept the EUA/EUI/Prep Act medical product, causing Plaintiffs to sustain economic and emotional damages.

34.     After being presented with Defendants' ultimatum, certain of Plaintiffs ACCEPTED UNDER DURESS an injection of an EUA/EUI/PREP Act medical product, and each of them sustained emotional and legal[2] damages directly related to the deprivation of their Constitutional and federal statutory rights to be

---

[2] Should these Plaintiffs develop an injury from the product's use, their due process rights to seek judicial relief have been deprived of them by an act of fraud by Defendants.

FIRST AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; BREACH OF CONTRACT AND WRONGFUL TERMINATION; JURY TRIAL DEMANDED

free from "sanctions," "coercion," "undue influence," and "unjustifiable pressures."[3]

35.     Plaintiffs sustained financial, emotional, and legal[4] damages directly related to Defendants depriving Plaintiffs of their Constitutional and federal statutory rights to be free from "sanctions," "coercion," "undue influence," and "unjustifiable pressures" when offered a federally funded investigational drug or device.

**B.     EMERGENCY USE AUTHORIZATION (EUA)**

36.     As a matter of law, Congress prohibits persons from introducing drugs into commerce before receiving an FDA marketing license.[5]

37.     However, for limited reasons of compassion, education, and emergency use, Congress provides a legal mechanism to allow persons to

---

[3] President Biden was bound to comply with 45 CFR Part 46 and the Belmont Report.  45 CFR § 46.116 and the Belmont Report define the "adequate standards" of informed consent when individuals are involved in investigational new drugs under federal authority or funding.

[4] Should Plaintiffs using the investigational drugs under duress develop an injury from the product's use, their due process rights to seek judicial relief have been deprived of them by an act of fraud by Defendants.

[5] "No person shall introduce or deliver for introduction into interstate commerce any new drug, unless an approval of an application filed pursuant to subsection (b) or (j) is effective with respect to such drug." 21 U.S.C. § 355(a)

participate in the investigational[6] and unlicensed use of drugs and devices according to the product's labeling, known as "expanded access protocols."[7]

38.     "Unlicensed use" means the use of a medical product for a purpose not licensed by the FDA (legal indication, usage, and contraindications) according to the product's labeling.

39.     A drug manufacturer may promote a licensed product only according to its legal indication and uses.[8]

40.     Only the FDA can assign the drug or device its legal indication and classification.

_____

[6] Investigational drug "means a new drug or biological drug that is used in a clinical investigation." (21 CFR 312.3 "Investigational new drug") Clinical investigation "means any experiment in which a drug is administered or dispensed to, or used involving, one or more human subjects. For the purposes of this part, an experiment is any use of a drug except for the use of a marketed drug in the course of medical practice." (21 CFR 312.3 "Clinical investigation").

[7] 21 U.S.C. § 360bbb *et. seq.* Short Title: "Expanded Access to Unapproved Therapies and Diagnostics"

[8] "Under the provisions of the Food, Drug and Cosmetic Act, a company must specify the intended uses of a product in its new drug application to FDA. Once approved, the drug may not be marketed or promoted for so-called 'off-label' uses – *i.e.*, any use not specified in an application and approved by FDA. Pfizer promoted the sale of Bextra for several uses and dosages that the FDA specifically declined to approve due to safety concerns. The company will pay a criminal fine of $1.195 billion, the largest criminal fine ever imposed in the United States for any matter." - Justice Department Announces Largest Health Care Fraud Settlement in Its History. Justice.gov. Published September 2, 2009. Accessed November 12, 2023. https://www.justice.gov/opa/pr/justice-department-announces-largest-health-care-fraud-settlement-its-history

FIRST AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; BREACH OF CONTRACT AND WRONGFUL TERMINATION; JURY TRIAL DEMANDED

41.     Moreover, a drug or device is legally governed by its classification and FDA-licensed indication, usage, and contraindication.

42.     A drug is never governed by its formulation.

43.     Congress expressly authorized only the HHS Secretary to authorize expanded access protocols for the investigational and unlicensed use of drugs and devices.[9]

44.     Congress enacted Project Bioshield[10] in 2004, establishing emergency expanded access protocols[11] for the investigational and unlicensed emergency use of drugs and devices for large populations.

45.     Medical products authorized under this section of law are known as medical countermeasures.[12]

46.     A drug under EUA/EUI is considered investigational, and, as a matter of law, it cannot have a licensed indication for its emergency use.[13]

_____

[9] 21 U.S.C. §360bbb(a)
[10] https://www.govinfo.gov/content/pkg/PLAW-108publ276/pdf/PLAW-108publ276.pdf
[11] 21 U.S.C. § 360bbb-3
[12] National Defense Authorization Act 2004 TITLE XVI—DEFENSE BIOMEDICAL COUNTERMEASURES
https://www.govinfo.gov/content/pkg/PLAW-108publ136/pdf/PLAW-108publ136.pdf
[13] 21 U.S.C. §360bbb-3(a)(2)(A,B)

47.     On December 11, 2020, the FDA issued to Pfizer-BioNTech the first COVID-19 EUA for its investigational drug (officially named Pfizer-BioNTech COVID-19 Vaccine[14]), and the FDA confirmed that Pfizer's product "is an investigational vaccine not licensed for any indication."[15]

48.     On December 18, 2020, the FDA issued to ModernaTX, Inc., an EUA for its investigational drug (officially named Moderna COVID-19 Vaccine), and the FDA confirmed that Moderna's product "is an investigational vaccine not licensed for any indication."[16]

49.     On February 27, 2021, the FDA issued to Janssen Biotech, Inc., an EUA for its investigational drug (officially named Janssen COVID-19 Vaccine), and the FDA confirmed that Janssen's product "is an investigational vaccine not licensed for any indication."[17]

50.     On August 23, 2021, the FDA re-issued an EUA[18] for Pfizer-BioNTech COVID-19 Vaccine, informing the public that:

---

[14] *Id*. The FDA improperly allowed Pfizer to add the word "Vaccine" to its investigational name. The court should not confuse this product name to mean the drug's legal indication. "Pfizer-BioNTech COVID-19 Vaccine" is an investigational drug having no legal indication to treat, cure, or prevent any known disease.  The FDA classified the drug as an "investigational new drug."
[15] 86 Fed.Reg. 5200, Jan. 19, 2021
[16] 86 Fed.Reg. 5200, Jan. 19, 2021
[17] 86 Fed.Reg. 28608, May 27, 2021
[18] Exhibit "August 23, 2021 Pfizer EUA letter. See: "Conditions of Authorization" (Y)

FIRST AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; BREACH OF CONTRACT AND
WRONGFUL TERMINATION; JURY TRIAL DEMANDED

(1) This product **has not been approved or licensed by FDA**, but has been authorized for emergency use by FDA, under an EUA to prevent Coronavirus Disease 2019 (COVID-19) for use in individuals 12 years of age and older; (emphasis added)

(2) The emergency use of this product is only authorized for the duration of the declaration that circumstances exist justifying the authorization of emergency use of the medical product under Section 564(b)(1) of the FD&C Act unless the declaration is terminated or authorization revoked sooner.

51. Congress requires the HHS Secretary to establish the Scope of Authorization[19] for EUA products, determine the conditions by which persons can participate in an activity (e.g., manufacturing, distribution, administration, use/participation) and use the product,[20] and then publish the Scope of Authorization in the Federal Register[21] for public notice.

52. As an example, the HHS Secretary issued an EUA for Moderna (86 Fed.Reg. 5200, Jan. 19, 2021), Janssen (86 Fed.Reg. 28608, May 27, 2021), and Pfizer (86 Fed.Reg. 5200, Jan. 19, 2021).

53. In each EUA, the HHS Secretary establishes the conditions by which persons can participate in the program.

---

[19] 21 U.S.C. §360bbb-3(d)
[20] 21 U.S.C. §360bbb-3(e)
[21] 21 U.S.C. §360bbb-3(b)(4)

FIRST AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; BREACH OF CONTRACT AND WRONGFUL TERMINATION; JURY TRIAL DEMANDED

54.     The conditions of the EUA are in addition to any applicable requirements under 21 U.S.C. §360bbb-3.

55.     The COVID-19 drugs under Defendants' Policy requirements were the property of the federal government.

56.     The federal government created the CDC COVID-19 Vaccination Program to distribute the property to residents of California.

57.     The program required absolute voluntary participation of all persons, and only persons authorized by the CDC could participate in the federal property.

58.     President Biden was under a legal obligation to adhere to 21 U.S.C. §360bbb-3 (the EUA statute), Article VII of the ICCPR Treaty, 45 CFR Part 46, the Belmont Report, 10 U.S.C. § 980, the PREP Act and additional laws and regulations when distributing federal property.

59.     Defendants were not authorized by the U.S. Congress, California legislature, or any other authority to interfere in the distribution of the federal government's COVID-19 EUA/PREP Act drugs.

60.     Congress requires the HHS Secretary to ensure that individuals considering the use of EUA/PREP Act products are informed of their legal rights[22] under the statute (option to accept or refuse).

---

[22] 21 U.S.C. §360bbb-3(e)(1)(A)(ii)(III)

61.     A declared emergency removes 21 U.S.C. § 355(a)'s prohibition on introducing specifically identified and available unlicensed drugs into commerce.

62.     Congress specifically conferred the right to refuse upon a person considering the administration of an EUA/PREP Act product because, in 1972, the nation was made aware of human rights atrocities committed against African-American males at the hands of their own government.[23]

63.     In 1973, Senator Edward Kennedy held live hearings in support of passing the National Research Act, exposing medical research abuses by the federal government and pharmaceutical companies, primarily impacting persons of color, women, Indians, and the poor.

64.     In 1974, Congress enacted the National Research Act[24] establishing Institutional Review Boards, the Belmont Report,[25] and the requirement of the HHS Secretary to promulgate regulations governing the protection of humans involved in federally funded investigational medical products.

65.     In the early 1980s, the HHS Secretary published those regulations

_____

[23] Tuskegee Study - Timeline - CDC - OS. Published 2023. Accessed November 23, 2023. https://www.cdc.gov/tuskegee/timeline.htm
[24] Title II of the National Research Act –
https://www.govinfo.gov/content/pkg/STATUTE-88/pdf/STATUTE-88-Pg342.pdf
[25] The National Commission for the Protection of Human Subjects of Biomedical and Behavioral Research. - Belmont Report. Colorado, DC: U.S. Department of Health and Human Services, 1979.

under 45 CFR Part 46 (Common Rule).

66.    The regulations are lawful requirements of all federal agencies and departments and persons conducting business with those agencies and departments.

67.    The regulations were designed for the express purpose of protecting humans involved in federally funded investigational projects.

68.    This led to Congress developing adequate standards of informed consent outlined in detail under 45 CFR § 46.116 and the Belmont Report.[26]

69.    The adequate standards of informed consent require the legally effective informed consent[27] of the individual to be prospectively obtained when involving them in federally funded investigational medical products.

70.    This form of consent requires the person sponsoring the product[28] or acting on behalf of the sponsor[29] to ensure the individual considering participation is not under a "sanction," "coercion," "undue influence," or "unjustifiable

---

[26] 45 CFR § 46.101(c) & 45 CFR § 46.101(i) require any federally funded research activity to come under the purview of the Belmont Report.

[27] 45 CFR 46.116(a)(1); See also, Doc 8, Footnote 31, ¶ 72, 73, 74,

[28] The federal government purchased all COVID-19 EUA drugs and became their sponsor.

[29] Los Angeles Unified School District was acting on behalf of the federal and state government when requiring Plaintiffs to inject the federal property into their bodies as a condition to continue employment.

pressure" to participate.[30]

71.    Should participants come under those outside pressures, then the person sponsoring the product fails to obtain the individual's legally effective informed consent, even if the individual consents to the use of the product.

72.    Therefore, the option to "refuse" has significant Congressional history for the purpose of preventing the U.S. government, pharmaceutical companies, and Defendants from committing additional human rights atrocities.

73.    The right to refuse the unlicensed use of EUA/PREP Act products ensures that the federal, state, and local governments comply with the laws pertaining to the investigational use of unlicensed EUA/PREP Act products.[31]

74.    The lawful right of the individual to "consider" the use of the unlicensed EUA/PREP Act products is a right conferred upon the individual in clear and unambiguous language by a valid act of Congress.

75.    No government, public officer, private employer, or any other person of authority may interfere in the individual's autonomous choice, whether that choice is to accept or refuse the use of the EUA/PREP Act products.

---

[30] The Belmont Report's definition of "adequate standards" of informed consent. See Part C: Applications 1. Informed Consent. https://www.hhs.gov/ohrp/sites/default/files/the-belmont-report-508c_FINAL.pdf
[31] 45 CFR Part 46, the Belmont Report, Article VII of the ICCPR Treaty, Federal Wide Assurance program, CDC COVID-19 Vaccination Program Providers Agreement, among others.

76.    The choice of whether to use or not use EUA/PREP Act products belongs exclusively to the individual and not to a third party agreeing or disagreeing with that choice.

77.    21 U.S.C. §360bbb-3, *et seq*, is a pervasive federal scheme to introduce unlicensed medical products into commerce only under a declared emergency.

78.    The Supremacy Clause Doctrine dictates that no person has lawful authority to establish, enforce, or continue in effect with a law, rule, regulation, ordinance, or any other legal means that interferes with or amends the EUA/PREP Act products' expanded access protocol as established by the HHS Secretary and Congress.[32]

79.    Such interference poses an obstacle to accomplishing federal goals for the unlicensed use of the EUA/PREP Act products.

---

[32] "FDA states that the terms and conditions of an EUA issued under section 564 preempt state or local law, both legislative requirements and common-law duties, that impose different or additional requirements on the medical product for which the EUA was issued in the context of the emergency declared under section 564." - Emergency Use Authorization of Medical Products and Related Authorities," Section VII. U.S. Food and Drug Administration. Published 2022. Accessed June 6, 2023. https://www.fda.gov/regulatory-information/search-fda-guidance-documents/emergency-use-authorization-medical-products-and-related-authorities#preemption

80.     Public and private employers may not use a state's at-will employment law or any other common law as the means to interfere in Plaintiffs' lawful authority to exercise their option to accept or refuse.

81.     The use of that law to interfere with Plaintiffs' autonomous choice is impossible to reconcile with federal law.[33]

82.     Congress does not intend to displace a state's at-will employment doctrine in all areas of law. However, when the EUA/PREP Act scheme is viewed under the field preemption test, it is clear that Congress preempts the use of the State's at-will employment law when it is used solely to interfere in the administration of EUA/PREP Act products.

83.     Congress completely preempts a state, or political subdivision of a state, or any other legal authority from establishing, enforcing, or continuing in effect, with respect to EUA/PREP Act products, any provision of law that is different from, or is in conflict with, any requirement applicable under the EUA statute or the Scope of Authorization issued by the HHS Secretary.

---

[33] *Arizona v. United States*, 567 U.S. 387, 399 (2012) ("[Congress's] intent to displace state law altogether can be inferred from a framework of regulation 'so pervasive . . . that Congress left no room for the States to supplement it' or where there is a 'federal interest . . . so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'") (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

84.     Congress empowers the HHS Secretary with the authority to establish the conditions by which persons participate in activities under the EUA statute.

85.     However, Congress was explicit that "Nothing in this section provides the Secretary any authority to require any person to carry out any activity that becomes lawful pursuant to an authorization under this section."[34]

86.     In other words, the HHS Secretary has lawful authority to grant expanded access protocols for EUA/PREP Act products, but he cannot require anyone to use them.

87.     Specifically, Congress prohibits the Secretary from requiring any person to manufacture, distribute, store, administer, inject, wear, test, or otherwise use the product.

88.     Defendants' policy, relying on EUA/PREP Act products for compliance, is arbitrary and capricious because Congress expressly prohibits persons from manufacturing, distributing, administering, or using EUA/PREP Act products under involuntary conditions.

89.     Healthcare workers are not legally obligated to administer EUA/PREP Act products to Plaintiffs, nor can Defendants require healthcare workers to perform that function.

---

[34] 21 U.S.C. §360bbb-3(l)

90.     Moreover, Plaintiffs are not required to use any product authorized under the section of the law, nor can Defendants require Plaintiffs to use them as a condition of anything.

91.     Defendants do not claim to be the HHS Secretary, nor do they state by what authority they can require that which Congress prohibits (i.e., involuntary participation).

92.     Therefore, when Defendants enacted their COVID-19 Vaccination Policy relying exclusively on EUA COVID-19 drugs for compliance with the Ordinance, they fraudulently usurped the authority of Congress, the HHS Secretary, and Plaintiffs by amending the conditions established under the EUA statute by a valid act of Congress.

93.     Defendants had no lawful power to insert themselves into a position of authority delegated only to the United States HHS Secretary.

94.     Defendants had no authority to amend the legal scheme by which persons access the federal government's COVID-19 property.

95.     Defendants had no authority to require of Plaintiffs that which the U.S. Congress prohibits (i.e., mandatory participation).

96.     Defendants' policy, as applied, was *ultra vires*; thus, it lacked the force of law.

97.     Defendants, therefore, misrepresented and extended their authority under fraudulent pretense when establishing and acting under their Policy to penalize Plaintiffs for not complying with the requirements of the Policy.

## C.     EMERGENCY USE INSTRUCTION (EUI)

98.     The CDC has claimed the authority to grant Emergency Use Instructions for the unlicensed use of products. However, no such authority exists in federal law.

99.     The CDC claims that "The CDC Director has legal authority to create, issue, and disseminate EUI for FDA-approved medical products. EUI inform healthcare providers and recipients about such products' approved, licensed, or cleared conditions of use under circumstances that go beyond the scope of the approved labeling (package insert)."[35]

100.    There are several EUIs for COVID-19 drugs of which the public is unaware.

101.    Until courts rule otherwise, governmental leaders will continue to enact mandatory policies relying on EUA/PREP Act products.

_____

[35] Questions and Answers about Emergency Use Instructions (EUI) below Are Answers to Frequently Asked Questions about Emergency Use Instructions (EUI). Refer to EUI for Pfizer-BioNTech COVID-19 Vaccine and Moderna COVID-19 Vaccine for Additional Doses. Accessed November 12, 2023. https://www.cdc.gov/vaccines/covid-19/eui/downloads/EUI-FAQ.pdf

FIRST AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; BREACH OF CONTRACT AND WRONGFUL TERMINATION; JURY TRIAL DEMANDED

102.    Because the CDC is issuing EUIs under the EUA authority of the

HHS Secretary, it is operating under the same treaties, laws, federal agreements,

and federal contracts as EUAs.

103.    Defendants' reliance on EUIs for compliance with their Policy

violated federal law and Plaintiffs' Constitutional and statutory rights.

### D.    THE PREP ACT

104.    In 2005, Congress passed the Public Readiness and Emergency

Preparedness Act, hereafter referred to as the PREP Act,[36] to provide immunities

for persons volunteering for "covered" activities.

105.    In accordance therewith, the HHS Secretary issued a PREP Act

declaration for Medical Countermeasures against COVID-19 in February 2020.[37]

106.    As a matter of law, all COVID-19 drugs, influenza vaccines, masks,

and diagnostic testing articles under Defendants' Ordinance No. 187134

requirements have been declared a countermeasure under the PREP Act.[38]

107.    The PREP Act, fundamentally, is an immunity statute.

108.    Due to the near absolute immunities provided by the U.S. Congress

for persons involved in the various activities of "covered countermeasures," the

---

[36] 42 U.S.C. § 247d-6d & 42 USC 247d-6e
[37] 85 FR 15198
[38] See Amendments I-XI of 85 FR 15198

statute establishes restrictions, obligations, and duties for persons and governments involved in those activities.

109.    Congress expressly crafted language preempting state and local law conflicting with the PREP Act,[39] which provides, in pertinent part:

> (8) Preemption of State law
>
>> During the effective period of a declaration under subsection (b)…no State or political subdivision of a State may establish, enforce, or continue in effect with respect to a covered countermeasure any provision of law or legal requirement that—
>>
>> (A) is different from, or is in conflict with, any requirement applicable under this section; and
>>
>> (B) relates to the…administration…of the covered countermeasure, **or to any matter included in a requirement applicable to the covered countermeasure** under this section or any other provision of this chapter, **or under the Federal Food, Drug, and Cosmetic Act**.[40] [emphasis added].

110.    Moreover, Congress informed legal authorities that:

> (c) Voluntary program
>
> The Secretary shall ensure that a State, local, or Department of Health and Human Services plan to administer or use a covered countermeasure is consistent with any declaration under 247d–6d of this title…and that potential participants are educated with respect to contraindications, **the voluntary nature of the**

---

[39] 42 U.S.C. § 247d-6d(b)(8)
[40] 21 U.S.C. § 301 et. seq.

**program**, and the availability of potential benefits and compensation under this part. [Emphasis added.][41]

111.   The "voluntary nature" of the "program" consists of "covered countermeasures,"[42] "covered persons,"[43] "covered individuals,"[44] and "qualified persons."[45]

112.   Therefore, as a general rule, no person may utilize any lawful authority to "establish," "enforce," or "continue in effect with" "any provision of law or legal requirement" that otherwise conflicts or interferes with the "voluntary nature" of the program by establishing involuntary conditions such as Defendants' Policy.

113.   Moreover, no person may utilize any lawful authority to "establish," "enforce," or "continue in effect with" "any provision of law or legal requirement" that interferes with "any matter" relating to any "requirement applicable to the covered countermeasure" under 21 U.S.C. §360bbb-3 which includes a person's authority to accept or refuse the MCM without consequence.[46]

---

[41] 42 U.S.C. § 247d-6e(c)
[42] 42 USC § 247d-6d(i)(1)
[43] 42 USC § 247d-6d(i)(2)
[44] 42 USC 247d-6d(a)(3)(C)(i,ii)
[45] 42 USC § 247d-6d(i)(8)
[46] 42 U.S.C. § 247d-6d(b)(8)(b) states to any matter or requirement applicable to a countermeasure under the FDCA. 21 U.S.C. §360bbb-3(e)(1)(A)(ii)(III) is under the FDCA.

114. **As a matter of law, Congress completely preempts a state, or political subdivision of a state, or any other legal authority from establishing, enforcing, or continuing in effect with respect to a countermeasure under the PREP Act, any provision of law that is different from or is in conflict with, any requirement applicable under the statute or the declared emergency and its amendments as published in the Federal Register**.

115. Therefore, Defendants were expressly preempted from using their authority for the sole purpose of interfering with Plaintiffs' authority to determine participation in a PREP Act "covered countermeasure."

116. The Policy, as applied, required Plaintiffs to inject or otherwise use a PREP Act product (e.g., any COVID-19 drug, COVID-19 investigational testing kits) as a condition to enjoy a privilege of government (e.g., public employment).

117. When Plaintiffs refused to surrender their statutory authority to refuse the product's administration, Defendants, acting with moral turpitude, informed Plaintiffs that they would lose access to living wages (public employment) and their liberties.

118. Defendants' use of their Policy as the means to apply punitive actions against Plaintiffs refusing administration of a countermeasure under the PREP Act was *ultra vires* and, therefore, lacked the force of law.

119.   Moreover, Defendants' use of their Policy to penalize Plaintiffs for refusing the administration of a PREP Act countermeasure deprived Plaintiffs of their Constitutional and statutory rights.

**E.    FOURTEENTH AMENDMENT EQUAL PROTECTION OF LAWS**

120.   The Fourteenth Amendment to the U.S. Constitution guarantees equal protection of the laws.

121.   It is a well-established U.S. Supreme Court precedent that a federal statute conferring a right onto an individual in unambiguous language is enforceable under 42 U.S.C. § 1983.[47]

122.   The EUA statute contains a required condition of the Secretary "to ensure that individuals to whom the product is administered are informed — 'of the option to accept or refuse administration of the product.'"

123.   Therefore, the statute conferred a legal right onto Plaintiffs to accept or refuse any EUA/PREP Act product. The "option" is a federally secured right established by a valid act of Congress.

---

[47] *Maine v. Thiboutot*, 448 U.S. 1 (1980), the court held that "Even were the language ambiguous, however, any doubt as to its meaning has been resolved by our several cases suggesting, explicitly or implicitly, that the §1983 remedy broadly encompasses violations of federal statutory as well as constitutional law." See also, *Health and Hospital Corporation of Marion Cty. V. Talevski,* 599 U.S. ____ (2023).

124. Defendants owed a Constitutional duty to treat Plaintiffs equally before the law, irrespective of their chosen statutory option. That Constitutional duty required Defendants to ensure Plaintiffs were free from outside pressures when considering either option and, once the option was chosen, to treat Plaintiffs equally, irrespective of the option chosen.

125. As a matter of law, Defendants are not allowed to treat persons choosing the option to accept differently than persons choosing the option to refuse.

126. The statute does not afford Defendants the legal authority to establish positive or negative benefits based on an individual's chosen option. Such conditions violate the Equal Protection doctrine guaranteed to Plaintiffs under the Fourteenth Amendment.

127. However, Defendants' Policy prospectively applied punitive actions only to persons (Plaintiffs) exercising the federally secured option to refuse and the PREP Act in violation of Plaintiffs' Fourteenth Amendment rights.

128. Therefore, Defendants' Policy stating, "Failure to comply with the mandate to be vaccinated and/or failure to provide the appropriate qualifying exemption documentation may result in disciplinary action, being placed on unpaid leave, and/or separated from District service" violated the Fourteenth

Amendment's Equal Protection Doctrine because it did not apply the two options equally to Plaintiffs.

129. Defendants refused to acknowledge the option to refuse and only protected the option to accept.

130. Defendants' Policy and actions taken under its authority were *ultra vires* because it required the Los Angeles Unified School District to treat Plaintiffs differently solely on their chosen option, in violation of the Fourteenth Amendment's Equal Protection Doctrine.

## F.    FOURTEENTH AMENDMENT DUE PROCESS

131. The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution guarantees the right to due process of law before infringing a citizen's interest in life, liberty, or property.

132. The EUA statute contains a required condition of the Secretary "to ensure that individuals to whom the product is administered are informed — 'of the option to accept or refuse administration of the product.'"

133. The option applies to any product authorized under the statute, which includes COVID-19 testing articles, masks, and other drugs and devices.

134. The PREP Act requires only voluntary participation.

FIRST AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; BREACH OF CONTRACT AND
WRONGFUL TERMINATION; JURY TRIAL DEMANDED

135.   Defendants Policy stripped Plaintiffs of their option to refuse without consequence and subjected them to involuntary participation in a PREP Act countermeasure without a hearing.

136.   If there is a consequence to a person exercising a specific right conferred upon them by a valid act of Congress, then the "right" is not a right.

137.   Defendants violated the substantive due process rights of Plaintiffs when enacting their Policy because that Ordinance prospectively stripped defendants of their Constitutional right to bodily autonomy and integrity.

138.   The PREP Act also strips an individual of their due process rights to seek judicial relief should injury occur from the use of an EUA/PREP Act product, but only after the person legally and effectively consents[48] to the use of the product (i.e., free from outside pressures). This reason is why the "program" is under "voluntary conditions."

139.   Defendants cannot compel Plaintiffs, under threat of penalty, to surrender their due process rights.

140.   Such a requirement is a hostile attack on the fundamental principles upon which the federal Constitution is founded.

---

[48] Investigational uses of products funded or under federal authority must comply with 45 CFR § 46.116, 122 and the Belmont Report which defines "legally effective informed consent." Defendants are not authorized to obtain Plaintiffs' consent and such fact demonstrates its mandate is *ultra vires*.

141.   At all times pertinent, Defendants refused to acknowledge Plaintiffs' statutory authority to refuse the EUA/PREP Act products without consequence.

142.   Therefore, irrespective of any procedure to allow Plaintiffs a date, time, and place to air their complaint, their rights were never adjudicated impartially.[49]

143.   Defendants violated the procedural due process rights of Plaintiffs by refusing to acknowledge their statutory authority to refuse EUA/PREP Act products without incurring a penalty or losing a benefit to which they were otherwise entitled.

144.   Moreover, Defendants did not provide Plaintiffs with an opportunity to have their complaint heard before an impartial committee that would adjudicate through the understanding of Plaintiffs' right to refuse compliance with the Policy, as applied, which is a violation of Plaintiffs' Fourteenth Amendment procedural due process rights.

145.   Worse yet is the shocking and outrageous behavior of Defendants using their Policy to prospectively strip Plaintiffs' due process rights should they incur an injury from the use of PREP Act countermeasure.

---

[49] Plaintiffs have the Constitutional right "to present [their] case and have its merits fairly judged." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982)

146.   Persons who surrendered their Constitutional protections due to Defendants' coercive Ordinance and injected one of the investigational drugs into their bodies and also incurred injury from the countermeasure's use are prohibited by the PREP Act from seeking judicial relief for all practical purposes.

147.   Defendants' enactment of their Policy, as applied, was *ultra vires* because it stripped Plaintiffs of legal rights outside of their Fourteenth Amendment due process rights.

### G.   UNCONSTITUTIONAL CONDITIONS DOCTRINE

148.   Governments are preempted from requiring persons to use EUA/PREP Act products as the basis to enjoy a privilege of the government (e.g., education, use of facilities, unemployment benefits, public employment, etc.) to which they are otherwise entitled.

149.   The Supreme Court has held that a person "may not barter away his life or his freedom, or his substantial rights" (*Home Ins. Co. of New York v. Morse*, 87 U.S. 455, 451 (1874)).

150.   The Los Angeles Unified School District holds authority over public employment and establishes the conditions by which persons can enjoy that public benefit.

151.   The US Supreme Court held:

> "It would be a palpable incongruity to strike down an act of state legislation which, by words of express divestment, seeks

to strip the citizen of rights guaranteed by the federal Constitution, but to uphold an act by which the same result is accomplished under the guise of a surrender of a right in exchange for a valuable privilege which the state threatens otherwise to withhold. It is not necessary to challenge the proposition that, as a general rule, the state, having power to deny a privilege altogether, may grant it upon such conditions as it sees fit to impose. But the power of the state in that respect is not unlimited; and **one of the limitations is that it may not impose conditions which require the relinquishment of constitutional rights.** If the state may compel the surrender of one constitutional right as a condition of its favor, it may, in like manner, compel a surrender of all. **It is inconceivable that guaranties embedded in the Constitution of the United States may thus be manipulated out of existence** (emphasis added)."[50]

152.   Defendants' Policy established a condition that Plaintiffs must inject or otherwise use an EUA, EUI, or PREP Act product as a condition to enjoy the government privilege of continuing or starting public employment. The U.S. Supreme Court held:

> Broadly stated, the rule is that the right to continue the exercise of a privilege granted by the state cannot be made to depend upon the grantee's submission to a condition prescribed by the state which is hostile to the provisions of the federal Constitution.[51]

---

[50] *Frost Trucking Co. v. R.R. Com*, 271 U.S. 583, 593-94 (1926)
[51] *Western Union Tel. Co. v. Kansas*, 216 U.S. 1, 47, 48 S., 30 S. Ct. 190; *Western Union Tel. Co. v. Foster*, 247 U.S. 105, 114, 38 S. Ct. 438, 1 A. L. R. 1278. (*U.S. v. Chicago, M., St. P. &P. Railway Co.*, 282 U.S. 311, 328-329 (1931)).

FIRST AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; BREACH OF CONTRACT AND WRONGFUL TERMINATION; JURY TRIAL DEMANDED

153.   The Policy was "hostile" to the federal Constitution because it enabled Defendants to "impose conditions which require[d] the relinquishment of constitutional rights" "as a condition" of Plaintiffs to enjoy a "privilege" of the government, thus manipulating the Constitution "out of existence."

154.   Therefore, the Policy was *ultra vires* because it established an unconstitutional condition upon Plaintiffs to enjoy a privilege of the government to which they were otherwise entitled.

## H.   WILLFUL AND WANTON DISREGARD FOR RIGHTS

155.   At all times pertinent, Defendants concealed Plaintiffs' rights to refuse administration of an EUA, EUI, or PREP Act product, which are under laws having significant legal consequences to Plaintiffs' legal rights.

156.   Individuals who consent to receive one of the EUA, EUI, or PREP Act products must agree to the following terms and conditions, including but not limited to:

    A.   forfeiture of civil litigation rights resulting from injuries;[52]

---

[52] PREP Act forfeits all civil actions for damages in most situations.

B.    allowing their private identifiable information to be collected and used for a variety of purposes by unknown persons;[53]

C.    allow their involvement with the EUA product to be cataloged by various persons for unknown purposes,

D.    allow the data collected about their adverse events to be utilized by researchers for unknown purposes and for eternity,[54]

E.    assume greater risks to their safety, health, and legal rights.[55]

157.    Defendants enacted a "vaccination" program but exclusively relied on EUA/EUI/PREP Act drugs that are not licensed as vaccines or any other indication for compliance.

158.    Defendants did not inform Plaintiffs that EUA/EUI/PREP Act drugs were not licensed by the FDA nor classified as a "vaccine."

159.    Defendants' Policy statement that, "District employees who serve the District in any capacity may apply to seek exemption from the COVID- 19 vaccine

---

[53] Each EUA and/or the CDC COVID-19 Vaccination Program Provider Program requires manufacturers and/or emergency stakeholders to obtain private identifiable information.

[54] Each EUA and/or the CDC COVID-19 Vaccination Program Provider Program requires manufacturers and/or emergency stakeholders to monitor, report and study a variety of adverse reactions to EUA products.

[55] The EUA statute requires potential recipients to be made aware of the risks, alternatives, and the fact that the product is only authorized by the Secretary under emergency conditions.  These elements provide potential recipients with the required information to make a quality and legally effective decision to consent.  Therefore, consent means the individual agrees to assume more than minimal risk as defined in 21 CFR 50.3(k).

requirements," was a direct assault on the U.S. Congress because it established a law that fundamentally changed federal legislation.

160.   Plaintiffs' authority to reject the administration of an EUA, EUI, or PREP Act product is absolute.

161.   Defendants had no authority to establish a requirement to seek an exemption as the right to refuse an EUA/EUI/PREP Act product.

162.   Defendants enacted a Policy outside the scope of their discretionary or other authority and in defiance of the United States Congress and the federal Constitution.

163.   Defendants used the Policy as the means to apply coercive and punitive punishment to Plaintiffs for the sole reason of them exercising a legal right of which Defendants were restricted from interfering.

164.   Defendants used the Policy to terminate the employment of Plaintiffs or otherwise withheld a benefit to which Plaintiffs were otherwise entitled in violation of Plaintiffs' Fourteenth Amendment and statutory rights.

165.   Defendants destroyed the emotional well-being of Plaintiffs, and their dreams, goals, housing, retirement accounts, healthcare, and the lives of the loved ones relying upon Plaintiffs having access to living wages, solely because Plaintiffs chose a federally secured right Defendants disagreed with, and it infuriated them.

166.   Therefore, Defendants enacted a Policy providing them legal cover to accomplish that which the Constitution and the U.S. Congress prohibited.

167.   Defendants engaged in lawless activity that shocked the conscience as outrageous, intolerable, and extreme, and placed Plaintiffs in severe emotional distress, fearing for their lives[56] and livelihoods. Such debased leadership is unheard of in modern societies and exceeds the bounds of decency.

## VI.  LEGAL CLAIMS

168.   The facts described above constitute a deprivation of several rights guaranteed to Plaintiffs by the United States Constitution, federal statutes, and treaties.

169.   These deprivations are actionable under 42 U.S.C. § 1983 because the Defendants acted under color of state law when enacting and acting upon Ordinance No. 187134 involving drugs and devices under federal authority and or its funding.

170.   Court precedent demonstrates that federal statutes and regulations with rights conferring language are enforceable under 42 U.S.C. § 1983.[57]

---

[56] VAERS reported 1,562,008 entries from December 2020 through May 26, 2023, including 35,272 deaths (1.6 per hour) and 263,462 (12.11 per hour) serious injuries for the new and unvetted mRNA drugs. These numbers demonstrate historical entries for any drug reported to VAERS since it was first established.
[57] *Maine v. Thiboutot*, 448 U.S. 1 (1980), the court held that "Even were the language ambiguous, however, any doubt as to its meaning has been resolved by

171.   Defendants were, and are, restricted from attempting to use their authority to amend the above-referenced statutes, regulations, treaties, agreements, and contracts due to the Supremacy Clause Doctrine and express language under the PREP Act.

172.   The Supremacy Clause Doctrine, and the express preemption language in the PREP Act and 21 U.S.C. § 360bbb-3 (the EUA statute), restrict public and private employers from using laws, Ordinances, or regulations to require individuals to participate in any EUA or PREP Act activity or use any EUA or PREP Act product.

173.   This extends to any at-will employment law, doctrine, or custom an employer would otherwise claim as the right to interfere with EUA or PREP Act protocols and to amend conditions established by Congress for Plaintiffs' benefit.

## **FIRST CAUSE OF ACTION**

### **42 U.S.C. § 1983 – Subjected to Investigational Drug Use**

174.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 173, as if fully set forth herein.

---

our several cases suggesting, explicitly or implicitly, that the §1983 remedy broadly encompasses violations of federal statutory as well as constitutional law." See also, *Health and Hospital Corporation of Marion Cty. v. Talevski.*

175.   21 U.S.C. §360bbb-3, Article VII of the ICCPR Treaty, Federal Wide Assurance, 10 U.S.C. § 980, EUA Scope of Authorization letters, the CDC COVID-19 Vaccination Program Provider Agreement, 45 CFR Part 46, the Belmont Report, and the Fourteenth Amendment clearly and unambiguously create rights enforceable pursuant to 42 U.S.C. § 1983.

176.   21 U.S.C. §360bbb-3(e)(1)(A)(ii)(III) (the EUA statute) contains a required condition of the Secretary "to ensure that individuals to whom the product is administered are informed — 'of the option to accept or refuse administration of the product.'"

177.   21 U.S.C. §360bbb-3, the CDC COVID-19 Vaccination Program Provider Agreement, and each EUA's Scope of Authorization contains research conditions for COVID-19 medical products meeting 45 CFR 46.102(l)'s definition of research requiring adherence to 45 CFR § 46.101[58] *et seq.*

178.   "Before involving a human subject in research covered by this policy, an investigator shall obtain the legally effective informed consent of the subject or the subject's legally authorized representative."[59] 45 CFR 46.116(a)(1)

---

[58] "This policy applies to all research involving human subjects conducted, supported, or otherwise subject to regulation by any Federal department or agency" 45 CFR 46.101(a).

[59] The CDC COVID-19 Vaccination Program was not a clinical trial but it was administered under required research parameters requiring adherence to 45 CFR Part 46, the Belmont Report, Article VII of the ICCPR Treaty, 10 U.S.C. § 980,

179.   45 CFR § 46.116 and the Belmont Report contain the only known definition of legally effective informed consent.

180.   45 CFR 46.116(b)(8) states: "A statement that participation is voluntary, refusal to participate will involve no penalty or loss of benefits to which the subject is otherwise entitled, and the subject may discontinue participation at any time without penalty or loss of benefits to which the subject is otherwise entitled."

181.   The Belmont Report, having the force of law,[60] declares, "An agreement to participate in research constitutes a valid consent only if voluntarily given. This element of informed consent requires conditions free of coercion and undue influence" and "Respect for persons requires that subjects, to the degree that they are capable, be given the opportunity to choose what shall or shall not happen to them. This opportunity is provided when adequate standards for informed consent are satisfied."

182.   Defendants breached their duties to establish "adequate standards" of informed consent when applying "sanctions," "coercion," "undue influence," and "unjustifiable pressures" on Plaintiffs to participate in COVID-19 investigational

_____

among other treaties, federal executive agreements, federal contracts, and state laws.
[60] 45 CFR § 46.101(c), 45 CFR 46.101(i), 45 CFR § 46.122

new drugs and devices (e.g., masks, testing articles). At all times pertinent, Defendants did not obtain Plaintiffs' legally effective informed consent.

183.   Article VII of the ratified International Covenant on Civil and Political Rights (ICCPR) Treaty affirms that "…no one shall be subjected without his free consent to medical or scientific experimentation."

184.   The Defendants' actions described above, individually and/or collectively, acting under color of law, and in deprivation of the Constitutional rights and rights secured by the above federal statutes, regulations, and treaty, unlawfully subjected Plaintiffs to the use of investigational medical products under threat of penalty outside of their legally effective informed consent as described in the above facts, thereby causing them damages described in Paragraphs 236 through 242, *infra*.

### SECOND CAUSE OF ACTION

### 42 U.S.C. § 1983 – Deprivation of Equal Protection Rights

185.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 173 as if fully set forth herein.

186.   The CDC COVID-19 Vaccination Program Provider Agreement, and the implementing statutes and regulations found at 45 CFR Part 46, the Belmont Report, 21 U.S.C. §360bbb-3, Article VII of the ICCPR Treaty, Federal Wide

Assurance, the EUA Scope of Authorization letter, and the Fourteenth Amendment clearly and unambiguously create rights enforceable pursuant to 42 U.S.C. § 1983.

187.   The Fourteenth Amendment to the U.S. Constitution guarantees equal protection of the laws.

188.   At all times pertinent, Defendants intentionally penalized only Plaintiffs who exercised their federal statutory right to refuse administration of a product under the PREP Act or an EUA drug (e.g., Pfizer-BioNTech COVID-19 Vaccine) or device (e.g., masks, COVID-19 testing articles), thereby applying the laws unequally to Plaintiffs and depriving them of their Constitutional Equal Protection Rights.

189.   The Defendants' actions described above, individually and/or collectively, and in derogation of the Constitution and the above statutes, regulations, and treaty, have deprived the Plaintiffs of their equal protection rights as described in the above facts, thereby causing them damages described in Paragraphs 236 through 242, *infra*.

## THIRD CAUSE OF ACTION

## 42 U.S.C. § 1983 – Deprivation of Constitutional

## Procedural Due Process Rights

190.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 173, as if fully set forth herein.

191.   At all times pertinent, Defendants ignored Plaintiffs right to accept or refuse an EUA product in an attempt to increase the number of participants in the CDC COVID-19 Vaccination Program, resulting in the deprivation of Plaintiffs' substantive and procedural Due Process rights.

192.   "The fundamental requisite of due process of law is the opportunity to be heard." *Louisville & Nashville R. Co. v. Schmidt*, 177 U. S. 230, 177 U. S. 236.

193.   Plaintiffs have the Constitutional right "to present [their] case and have its merits fairly judged." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982). At all times pertinent, Defendants refused to acknowledge Plaintiffs' Constitutional and Statutory rights, thereby nullifying impartiality.

194.   Defendants did not provide Plaintiffs with a date, time, place, or procedure to defend their right to refuse injection of an unlicensed drug before an impartial body considering their lawful authority to refuse before depriving them of their liberty and property.

195.   The Defendants' actions described above, individually and/or collectively, and in derogation of the Constitution and the above statutes, regulations, and treaty, have deprived the Plaintiffs of their procedural due process rights as described in the above facts, thereby causing them damages described in Paragraphs 236 through 242, *infra*.

///

## FOURTH CAUSE OF ACTION

## 42 U.S.C. § 1983 – Deprivation of Constitutional Substantive

## Due Process Rights

196.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 173, as if fully set forth herein.

197.    The CDC COVID-19 Vaccination Program Provider Agreement, and the implementing statutes and regulations found at 45 CFR 46, the Belmont Report, 21 U.S.C. §360bbb-3, Article VII of the ICCPR Treaty, Federal Wide Assurance, the EUA Scope of Authorization letter, and the Fourteenth Amendment clearly and unambiguously create rights enforceable pursuant to 42 U.S.C. § 1983.

198.    The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution guarantees the right to due process of law before infringing a citizen's interest in life, liberty, or property.

199.    Defendants' requirement that Plaintiffs inject unlicensed drugs into their bodies as a condition of employment "is not a legitimate exercise of the police power of the State, but an unreasonable, unnecessary and arbitrary interference with the right and liberty of the individual to contract in relation to labor, and, as such, it is in conflict with, and void under, the Federal Constitution."

*Lochner v. New York*, 198 U.S. 45 (1905)[61]

200.   Defendants' Policy, as applied, deprived Plaintiffs of their right to refuse the administration of EUA, EUI, or PREP Act products, a violation of Plaintiffs' substantive due process rights.

201.   Defendants' Policy, as applied, deprived Plaintiffs of their lawful right to freely determine their participation in the administration of EUA, EUI, or PREP Act products, a violation of Plaintiffs' substantive due process rights.

202.   Defendants' Policy, as applied, required Plaintiffs to seek an exemption despite Plaintiffs already possessing a federal statutory right to refuse, a violation of Plaintiffs' substantive due process rights.

203.   Defendants' Policy, as applied, required Plaintiffs to surrender their substantive due process rights to seek judicial relief should they incur injury from the product's use or administration as a condition to continue employment, a violation of Plaintiffs' substantive due process rights.

204.   The Defendants' actions described above, individually and/or collectively, and in derogation of the Constitution and the above statutes, regulations, and treaty, have deprived the Plaintiffs of their substantive due process

---

[61] Although the U.S. Supreme Court no longer follows the *Lochner* doctrine, the statement is applicable when viewed through the fact that the Defendants, acting on a state custom, were stripped of their police power under 21 U.S.C. §360bbb-3 and the PREP Act to deny Plaintiffs the right to sell their labors in the marketplace.

rights as described in the above facts, thereby causing them damages described in Paragraphs 236 through 242, *infra*.

## FIFTH CAUSE OF ACTION

### Unconstitutional Conditions Doctrine - 42 U.S.C. § 1983

205.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 173 as if fully set forth herein.

206.   The CDC COVID-19 Vaccination Program Provider Agreement, and the implementing statutes and regulations found at 45 CFR §46, the Belmont Report, 21 U.S.C. §360bbb-3, Article VII of the ICCPR Treaty, Federal Wide Assurance, the EUA Scope of Authorization letter, and the Fourteenth Amendment clearly and unambiguously create rights enforceable pursuant to 42 U.S.C. § 1983.

207.   "…[T]the state, having power to deny a privilege altogether, may grant it upon such conditions as it sees fit to impose. But the power of the state in that respect is not unlimited; and one of the limitations is that it may not impose conditions which require the relinquishment of constitutional rights. If the state may compel the surrender of one constitutional right as a condition of its favor, it may, in like manner, compel a surrender of all. It is inconceivable that guaranties embedded in the Constitution of the United States may thus be manipulated out of existence (emphasis added)." *Frost Trucking Co. v. R.R. Com*, 271 U.S. 583, 593-94 (1926)

208.   Defendants established conditions requiring Plaintiffs to surrender their Constitutional rights under the Fourteenth Amendment to enjoy privileges they were otherwise entitled, such as public employment.

209.   The Defendants' actions described above, individually and/or collectively, and in derogation of the Constitution and the above statutes, regulations, and treaty, manipulated the Constitutional rights of Plaintiffs out of existence as described in the above facts, thereby causing them damages described in Paragraphs 236 through 242, *infra*.

## **SIXTH CAUSE OF ACTION**

## **PREP Act - 42 U.S.C. § 1983**

210.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 173 as if fully set forth herein.

211.   The PREP Act, the CDC COVID-19 Vaccination Program Provider Agreement, and the implementing statutes and regulations found at 45 CFR Part 46, the Belmont Report, 21 U.S.C. §360bbb-3, Article VII of the ICCPR Treaty, Federal Wide Assurance, the EUA Scope of Authorization letter, and the Fourteenth Amendment clearly and unambiguously create rights enforceable pursuant to 42 U.S.C. § 1983.

212.   The PREP Act provides certain immunities to "covered countermeasures" when the HHS Secretary determines there is a public health

emergency and makes a declaration of that emergency through the publication in the Federal Register specifying the conditions by which the covered countermeasure and covered persons can participate and the use of such covered countermeasure.[62]

213.    Congress preempted Defendants from establishing laws and continuing in effect with existing ones (i.e., at-will employment doctrine) that would otherwise interfere with Plaintiffs' authority with respect to "conduct undertaken" concerning "any matter included in a requirement applicable" to a "covered countermeasure" under the PREP Act or the EUA statute including the required condition that ***Plaintiffs be informed of their legal right to either accept or refuse said countermeasure***.[63],[64](Emphasis added.)

214.    Congress was explicit that the HHS Secretary must establish conditions ensuring that "potential participants are educated with respect to…the voluntary nature of the program…"[65]

215.    The "program" consists of those agreeing to manufacture, distribute, administer ("covered person"), and receive[66] ("covered individual") the product.

---

[62] 42 U.S.C. § 247d-6d(b)(1)
[63] 21 U.S.C. § 301 is the Federal Food, Drug and Cosmetic Act, which ranges from §301 to §399, and thus includes 21 U.S.C. §360bbb-3(e)(1)(A)(ii)(III).
[64] 42 U.S.C. § 247d-6d(b)(8)
[65] 42 U.S.C. § 247d-6e(c)
[66] 42 U.S.C. §247d-6e(e)(2)

FIRST AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; BREACH OF CONTRACT AND WRONGFUL TERMINATION; JURY TRIAL DEMANDED

216.   Congress expressly restricted the HHS Secretary from having any authority to require any person to participate in any activity involving a "drug," or "device" under the EUA statute[67] or any "covered countermeasure" under the PREP Act.

217.   By extension, any person authorized to participate in the program is also restricted from mandating participation.

218.   Defendants established laws and policies that conflicted with the PREP Act and the EUA statute when they required Plaintiffs to use EUA, EUI, or PREP Act products under threat of penalty.

219.   Moreover, Defendants engaged in policy-making and conduct that conflicted with the PREP Act and the Fifth and Fourteenth Amendments of the United States Constitution.

220.   Mandatory participation in PREP Act covered countermeasures is a severe violation of the Constitution's Due Process guarantees.

221.   No person can be required to enter into a legally binding agreement requiring the forfeiture of legal rights under threat of penalty.

---

[67] 21 U.S.C. §360bbb-3(l): "Nothing in this section provides the Secretary any authority to require any person to carry out any activity that becomes lawful pursuant to an authorization under this section…"

FIRST AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; BREACH OF CONTRACT AND WRONGFUL TERMINATION; JURY TRIAL DEMANDED

222.   The terms and conditions associated with the PREP Act and the EUA statute represent a legally binding agreement as established by the U.S. Congress.

223.   Those terms require Plaintiffs to forfeit their right to seek judicial relief from injuries sustained from the use of the countermeasure and injuries sustained from the countermeasure's administration.

224.   The agreement also requires Plaintiffs to divulge their private health information and private identity and assume greater risks to their health, safety, and legal rights.

225.   Defendants' pronouncement that Plaintiffs must use EUA, EUI, or PREP Act products prospectively denies Plaintiffs their due process rights should they incur injury because the PREP Act denies them access to judicial relief for those injuries.

226.   Defendants utilized their position of authority to place Plaintiffs under threat of penalty if they chose not to use EUA, EUI, or PREP Act products, despite Defendants' positions having no such authority.

227.   Defendants changing the voluntary nature of the program into an involuntary program endangers the immunities of existing covered countermeasures established by the HHS Secretary.

228.   Defendants' interference is a direct assault on the Constitutional rights of Plaintiffs, which opens the doors to legal remedies not envisioned by Congress

FIRST AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; BREACH OF CONTRACT AND WRONGFUL TERMINATION; JURY TRIAL DEMANDED

but required of the Constitution for resulting injuries sustained by individuals when under threat of penalty to participate.

229.   The Defendants' actions described above, individually and/or collectively, and in derogation of the Constitution and the above statutes, regulations, and treaty, deprived the Constitutional and federal legal rights of Plaintiffs to only use EUA, EUI, or PREP Act products as described in the above facts, thereby causing them damages described in Paragraphs 236 through 242, *infra*.

## SEVENTH CAUSE OF ACTION

### *Against Defendant Los Angeles Unified School District*

### Breach of Contract

230.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 173 as if fully set forth herein.

231.   In the alternative to an at-will employment relationship, certain of Plaintiffs were employed by Defendant Los Angeles Unified School District pursuant to a written contract.

232.   Defendant Los Angeles Unified School District's written employment contract with Plaintiffs did not include a provision requiring Plaintiffs to accept EUA/PREP Act COVID-19 drugs or testing as a condition of employment.

233.   Defendant Los Angeles Unified School District's written employment contract with Plaintiffs were never modified in a mutually agreed-upon writing binding Plaintiffs to accept EUA/PREP Act COVID-19 drugs or testing as a condition of retaining their employment.

234.   Plaintiffs fully performed every requirement of their written employment contract(s).

235.   Breach of the Plaintiffs' contracts occurred when Los Angeles Unified School District through its various departments, employees, and agents, penalized and terminated Plaintiffs for refusing to accept EUA/PREP Act COVID-19 drugs or testing as a condition of retaining their employment.

236.   As a direct result of the Los Angeles Unified School District's breach of contract, Plaintiffs sustained and seek recovery of and for the following: loss of pay (front pay and back pay); loss of seniority; removal from promotion eligibility tracks; deprivation of promotions; loss of benefits; loss of accumulated sick pay, vacation, compensatory time, and/or paid time off; negative tax consequences (in the event of a lump sum award), including related accountant fees; attorney's fees; emotional distress; mental, psychological and physical harm; loss of income; loss of enjoyment of life; and compensatory, punitive, exemplary, legal, equitable, nominal and all other damages that this Court deems necessary and proper.

///

# **EIGHTH CAUSE OF ACTION**

## ***Against Defendant Los Angeles Unified School District***

## **Wrongful Termination in Violation of Govt. Code § 12940 et seq.**

237.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 173 as if fully set forth herein.

238.   In the alternative, and in the event this court finds that Plaintiffs are at-will employees of the Los Angeles Unified School District, and further finds that California's at-will employment doctrine was not preempted by federal law, the current circumstances present a public policy exception to California's at-will employment doctrine.

239.   As demonstrated above, Plaintiffs possessed and exercised a statutory right to refuse being injected with an EUA/PREP Act drug.

240.   As a result of Plaintiffs' exercise of their statutory right to refuse being injected with an EUA/PREP Act drug, the Los Angeles Unified School District took adverse actions against Plaintiffs, including but not limited to suspension without pay; forced retirement; forced resignation; and termination.

241.   As a direct result of the Los Angeles Unified School District's adverse actions taken against them, Plaintiffs sustained and seek recovery of and for the following: loss of pay (front pay and back pay); loss of seniority; removal from promotion eligibility tracks; deprivation of promotions; loss of benefits; loss of

accumulated sick pay, vacation, compensatory time, and/or paid time off; negative tax consequences (in the event of a lump sum award), including related accountant fees; attorney's fees; emotional distress; mental, psychological and physical harm; loss of income; loss of enjoyment of life; and compensatory, punitive, exemplary, legal, equitable, nominal and all other damages that this Court deems necessary and proper.

## NINTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

242.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 173 as if fully set forth herein.

243.   When the United States Congress refused to allow Defendants to apply consequences to Plaintiffs refusing to use EUA, EUI, or PREP Act products, Defendants engaged in a scorched-earth policy and inflicted with malicious intent severe emotional distress to the fullest extent that one in their positions of authority and power could inflict to the detriment of Plaintiffs' emotional well-being.

244.   The Defendants' conduct, committed with gross negligence, recklessness, or intent, as described above, gives rise to a claim of outrageous conduct and intentional infliction of emotional distress under the common law of the State of California against the Defendants for the damages described in Paragraphs 236 through 242, *infra*.

## **TENTH CAUSE OF ACTION**

## **Implied Private Right of Action 21 U.S.C. §360bbb-3**

245.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 173 as if fully set forth herein.

246.   Should the court not agree that §1983 provides Plaintiffs with the procedural vehicle to sue for the deprivation of rights under the EUA statute, Plaintiffs claim that the EUA statute contains an implied private right of action pursuant to *Cannon v. University of Chicago*, 441 U.S. 677 (1979), *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498 (1990), and *Cort v. Ash*, 422 U.S. 66 (1975).

247.   The Defendants' actions described above, individually and/or collectively, and in derogation of the Constitution and the above statutes, regulations, and treaty have deprived the Plaintiffs of their explicit right to refuse the administration of an Emergency Use Authorized drug and/or medical product without penalty as described in the above facts, thereby causing them damages described in Paragraphs 248 through 254, *infra*.

## **VII.  DAMAGES RECOVERABLE AND DEMANDED**

248.   The following paragraphs are hereby incorporated by reference into the Causes of Action One through Ten, as if set forth here *in extenso*.

249.   As a direct and proximate result of the Defendants' unreasonable and unlawful actions, Plaintiffs have suffered past damages and will suffer future

damages, both compensatory and general, including, but not limited to, front and back pay; loss of benefits; loss of accumulated sick pay; loss of retirement accounts; lost earnings on retirement funds; vacation time, compensatory time, and paid time off; negative tax consequences (in the event of a lump sum award), including related accountant fees; attorney's fees; emotional distress; mental, psychological and physical harm; loss of income; loss of enjoyment of life; for which defendants are liable in compensatory, punitive, exemplary, legal, equitable, and all other damages that this Court deems necessary and proper.

250.   When the Defendants' behavior reaches a sufficient threshold, punitive damages are recoverable in § 1983 cases. *Smith v. Wade*, 461 U.S. 30 (1983).  Because Defendants' actions were intentional and willful, Plaintiffs are entitled to, and hereby demand, an award of punitive damages against each and every Defendant in an amount sufficient to deter them, individually and collectively, from repeating their unconstitutional actions.  *Smith v. Wade*, 461 U.S. 30 (1983) .

251.   Because Defendants' actions involved reckless or callous indifference to the Plaintiffs' federally protected rights, Plaintiffs are entitled to, and hereby demand, an award of punitive damages against each and every Defendant in an amount sufficient to deter them, individually and collectively, from repeating their unconstitutional actions.  *Smith v. Wade*, 461 U.S. 30 (1983)

252.   Because Defendants' actions were motivated by evil motive or intent, Plaintiffs are entitled to, and hereby demand, an award of punitive damages against each and every Defendant in an amount sufficient to deter them, individually and collectively, from repeating their unconstitutional actions. *Smith v. Wade*, 461 U.S. 30 (1983)

253.   Plaintiffs seek recovery of attorneys' fees under the Civil Rights Attorney's Fees Awards Act of 1976 and 42 U.S.C. § 1988, and under any other provision of law or basis.

254.   Plaintiffs seek recovery of all court costs and out-of-pocket litigation expenses, including but not limited to expert fees, and legal interest on any amount of damages awarded.

## VIII.  JURY TRIAL DEMAND

255.   Plaintiffs are entitled to, and hereby demand, a trial by jury on all issues of fact.

## IX.  PRAYER

WHEREFORE, Plaintiffs pray for judgment in their favor and against Defendants as follows:

## ON THE FIRST CAUSE OF ACTION

1.   For damages described above for violating Plaintiffs' right to refuse investigational EUA/EUI/Prep Act products.

2.      For reasonable attorneys' fees.

**ON THE SECOND CAUSE OF ACTION**

1.      For damages described above for the deprivation of Plaintiffs' equal protection rights under the Constitution.

2.      For reasonable attorneys' fees.

**ON THE THIRD CAUSE OF ACTION**

1.      For damages described above for the deprivation of Plaintiffs' due process rights under the Constitution.

2.      For reasonable attorneys' fees.

**ON THE FOURTH CAUSE OF ACTION**

1.      For damages described above for the deprivation of Plaintiffs' substantive due process rights under the Constitution.

2.      For reasonable attorneys' fees.

**ON THE FIFTH CAUSE OF ACTION**

1.      For damages described above for violation of the Unconstitutional Conditions Doctrine.

2.      For reasonable attorneys' fees.

**ON THE SIXTH CAUSE OF ACTION**

1.      For damages described above for the deprivation of Plaintiffs' rights under the PREP Act.

2.      For reasonable attorneys' fees.

## ON THE SEVENTH CAUSE OF ACTION

1.      For damages described above for Defendant Los Angeles Unified School District's breach of contract.

2.      For reasonable attorneys' fees.

## ON THE EIGHTH CAUSE OF ACTION

1.      For damages described above for Defendant Los Angeles Unified School District's wrongful termination of Plaintiffs.

2.      For reasonable attorneys' fees.

## ON THE NINTH CAUSE OF ACTION

1.      For damages described above for Defendants' intentional infliction of emotional distress.

2.      For reasonable attorneys' fees.

## ON THE TENTH CAUSE OF ACTION

1.      To allow the Plaintiffs a private right of action under the EUA statute in the event the court does not find that § 1983 provides Plaintiffs the procedural vehicle to sue for deprivation of the rights identified above.

2.      For reasonable attorneys' fees.

## ON ALL CAUSES OF ACTION

1.      For judgment in favor of Plaintiffs;

FIRST AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS; BREACH OF CONTRACT AND
WRONGFUL TERMINATION; JURY TRIAL DEMANDED

2.      For costs of suit herein; and

3.      For such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Dated: February 12, 2024          **SCHEXNAYDRE LAW FIRM**
                                  BY:   /s/ *David J. Schexnaydre*
                                  DAVID J. SCHEXNAYDRE, T.A.
                                  Louisiana Bar Roll #: 21073
                                  2895 Highway 190 • Suite 212
                                  Mandeville, Louisiana 70471
                                  Telephone: (985) 292-2020
                                  Fax: (985) 235-1089
                                  Email: david@schexnaydre.com
                                  Lead Counsel for Plaintiffs-*Pro Hac Vice*

                                  AND

Dated: February 12, 2024          **JENNIFER W. KENNEDY
                                  ATTORNEY AT LAW**
                                  BY:   /s/ *Jennifer W. Kennedy*
                                  JENNIFER W. KENNEDY, ESQ.
                                  CA Bar No.: 185406
                                  61 S. Baldwin Ave #1626
                                  Sierra Madre, CA 91025-7076
                                  Telephone: 626-888-2263
                                  Email:     jenniferkennedyesq@gmail.com
                                  Local Counsel for Plaintiffs